Mr. Justice Hagner
delivered the opinion of the court.
Henry Clay Stewart, as the sole executor, and residuary legatee, propounded for probate in the Orphan’s Court of *308 this District, an instrument of writing which he claimed was the last will and. testament of Eev. Jared L. Elliott. Edmund Q-. Elliott, the next of kin and nephew of the-deceased interposed a caveat to the probate of the instrument so propounded, and the court passed an order directing the five following issues to be tried by a jury in the circuit court :
“ First. Whether the said paper writing purporting to be the last will and testament of the said Jared L. Elliott, bearing date on the 15th day of April, 1881, was executed and attested in due form of law.
“ Second. Whether the contents of said paper writing were read to or by the said Jared L. Elliott at or before the alleged execution thereof by him.
“ Third. Whether the said Jared L. Elliott, at the time of the alleged execution of said paper writing, was of sound and disposing mind, and capable of executing a valid deed or contract.
“Fourth. Whether the said paper wilting was executed by the said Jared L. Elliott, under the influence of suggestions, importunities and undue persuasion of the said Henry Clay Stewart, or any other person or persons, when his mind, from its disordered, diseased and enfeebled state, was unable to resist the same.
“ Fifth. Whether the execution of said paper writing was procured by the fraud, misrepresentations or undue influence or persuasion of the said Henry Clay Stewart, or any other person or persons, acting of their own volition or under the direction of the said Henry Clay Stewart.”
The case was there elaborately tried ; the court granted the instructions presented on behalf of the caveatee, Stewart, and six of those presented by the caveator, which were severally excepted to by Stewart at the time, and delivered its charge to the jury, which rendered its verdict as follows :
Upon the first issue, yes.
Upon the second, third and fourth issues, no.
Upon the fifth issue, yes, except as to fraud.
*309 The caVeatee thereupon made a motion which was entered upon the minutes of the trial justice “ to set aside said ver■dict and grant a new trial upon exceptions and for insufficient evidence.”
The reasons assigned in support of the motion were as follows :
“ First. That the evidence adduced in said trial was insufficient for said verdict.
Second. Because said verdict was contrary to law.
“ Third: Because it was contrary to the instructions of the court.
“ Fourth. Because it is contrary to the evidence.
“ Fifth. Because it is against the weight of the evidence.
“ Sixth. Because it is inconsistent.
“ Seventh. Because it is uncertain.
■Eighth. And also upon exceptions taken by said Stewart, ■severally, to the rulings of the court during the progress of the -trial, and to each of the prayers granted to the said caveator.”
The justice overruled the motion, and from his decision the eaveatee appealed to the General Term.
In this court several questions of practice have been very fully argued, touching the regularity of the appeal, and the extent of our authority.in examining the case. These points involve the proper construction of the act of Congress of March 3, 1863, which one would naturally suppose had been definitely settled during the intervening twenty years since its enactment. But we have concluded, in view of the alleged uncertainties as to the questions, to examine them anew aud express our opinion with respect to them in unequivocal terms.
1st. It is contended that no appeal lies to the General Term from rulings of the trial justice during the trial of issues from the Orphans’ Court involving the execution of a will and the competency, &c., of the testator.
It is true the trial of such issues is an exceptional proceeding, allowed only by a statute which authorizes no appeal, but seems rather to forbid it, from the terms in which it *310 requires the verdict to be certified to the Orphans’ Court for its guidance. It is also true that no appeal was.allowed in such eases in Maryland until the passage of the act of assembly of 1832 ; and that the Supreme Court of the United States refused to entertain an appeal from such rulings of the former Circuit Court of this District, (Van Ness vs. Van Ness, 6 Howard, 62); and, also, from like rulings from this court as now constituted. Wiley vs. Brown, 4 Wall., 65.
But we all are, nevertheless, of the opinion that an appeal does lie to the General Term, in such cases, under the terms of the organic act; and that the decision in Couglan vs. Poulson, 2 Mac Arthur, 208, announces the correct doctrine on the subject.
2d. It is insisted by the caveator, that the record presents no “ case ” within the meaning of the statute, secs. 803-6, RS. D. C.
Sec. 805 declares that where an appeal is taken from the decision below on a motion for a new trial, “ a bill of exceptions or case shall be settled in the usual manner.”
Notwithstanding some intimations to the contrary in one or more cases in our reports, we are of the opinion that the statute does not require the preparation of “ the statement of facts,” or “ agreed case,” spoken of by the books of practice ; but in the language of this court in Dant vs. District of Columbia, 3 Mac Arthur, 273, “ a case containing all the testimony is the proper practice when the motion for a new trial is founded upon its insufficiency, or where the damages are excessive. In no other mode can the legal effect of the evidence produced at the trial be determined in review of the verdict.”
In the cause before us, the record contains the certificate of the judge that it embodies all the evidence adduced on both sides at the trial; and it therefore presents the case contemplated by the statute.
3d. The caveator insists that the record contains no bill of exceptions as required by the statute, and, hence, that we are not at liberty to examine the questions of law intended to be presented for our consideration.
*311 Thé record shows plainly that the caveatee excepted to the granting of each of the six instructions asked by the caveator, which were given by the court; but the objection is that there is no separate bill of exception signed by the judge, and that the statute is not complied with where they are merely embodied in the case certified by the trial justice.
We are of opinion that the objection is not well taken, and that there was no necessity for any more formal presentation of the alleged errors. And this we intended should be explictly settled by the decision in O’Neil vs. The District of Columbia, Wash. Law Rep., Vol. 7, No. 32, p. 332.
The construction by the New York courts of the similar provision in their statute is thus announced in Brown vs. Irish, 12 How. Prac. Rep., 481 : “If questions of law and fact arise during the trial, and the party desires a review upon both, he may incorporate his exceptions in his case, stating them separate from the facts.”
4th. It has been earnestly contended on behalf of the caveatee, that the General Term upon this appeal is not confined to the right to reverse where it finds the verdict below was rendered upon “ insufficient evidence,” but that it is our duty equally to award a new tidal, if, upon an examination of the evidence, we should be of opinion that the verdict was “ against the evidence ” or “ against the weight of the evidence;” or, to carry the contention to its legitimate result, as expressed in one of the cases relied on, that we are authorized “to set aside the verdict and grant a new trial, where the court, from the evidence, reaches different conclusions of fact from those found by the jury.”
In support of this position we have referred to many decisions in the State of New York, which it is claimed are especially entitled tó consideration in this jurisdiction, as the construction by the courts of that State of the laws from which the provisions of our Revised Statutes on this subject are derived.
Sections 803 to 806 of our Revised Statutes are substantially copied from Sections 264 and 265 of the New York *312 Code of Procedure of 1851-2, although there are many-verbal departures from, the text of the original, and some important changes, as for example, the provision in the New York law that “ a motion for a new trial on a case or exceptions, &c., must in the first instance be heard and decided at a special term, (except that when exceptions are taken, the judge trying the case may at the trial direct them to be heard in the first instance at the General Tei’m),” is changed in section 806 Revised Statutes, so as to require the motions to be heard in this District always at the General Term in the first instance.
It will be found that many of the cases referred to by the caveatee’s counsel are addressed to the question of the power of the trial court to grant new trials in cases where the verdict appeared to be against the evidence or the weight of the evidence.
It had been contended (as in 24 How. Prac., 211, Allgro vs. Duncan), that the adoption of the Code of Procedure had limited the power of the trial justice in granting new trials to the causes enumerated in section 264 of that code. But the trial justice in that case, while commenting upon, what he styles the awkward phraseology of the section, declares, that as it was the clear and plain course under the old practice to grant a new trial, as well where the verdict "was against the evidence as where it was rendered upon insufficient evidence, he would not give a more restricted construction to his powers because of the peculiar phraseology of the section, “ A safe rule in such cases,” said the judge, “ is to apply the former practice and to interpret the obscurities and deficiencies of the code by its light.”
The doubts expressed by the profession upon the point seem to have been considered by the revisors as sufficiently important to be noticed in the subsequent Code of Civil Procedure of 1876-7, and section 264 of the former code was so amended when it appeared as section 999 of the new volume as to authorize the trial justice to award a new trial not only for “ excessive ” but also for “ insufficient damages;” and as well where the verdict was “ contrary to the evidence *313 or contrary to the law,” as where it had been rendered upon “ insufficient evidence ; ” and the annotator of the new code remarks that “the amendment relieves difficulties experienced ” in several cases which he refers to, among which is 24 Howard, 210.
But no such difficulties ever existed in this jurisdiction with respect to the power of the trial justice in granting a new trial, and section 804 Revised Statutes was never supposed to have limited the range of reasons for which the new trial might be granted by the judge who heard the cause.
The only purpose of the enumeration in the section was to designate the cases in which an appeal might be taken to the General Term from the order of the trial justice refusing a new trialand this enumeration constituted an effective limitation of the right of appeal to the three cases mentioned, viz., where the motion has been urged, either “ upon■ exceptions, or for insufficient evidence, or for excessive damages.” In no other case was an appeal to be allowed.
The other decisions cited from the New York reports to-establish that the General Term or the Court of Appeals off that State possess a wider range of review on motions for new trial than the enumerated cases, are quite consistent with the theory upon which those courts had determined to-construe the Code of Procedure, namely, in conformity with, the previous well-established practice in that State. Their-General Term had exercised that appellate authority without question before the enactment of the code, and it was not to be assumed that the jurisdiction was to be taken from that court in the absence of express words of denial.
But in the District of Columbia the case was widely different when the Revised Statutes were adopted. It hack been settled, time out of mind,, in Maryland, that the granting or refusal of a new trial was matter resting in the discretion of the court, and could not be ground for a writ off error or appeal.
From the Circuit Court, as organized before the establishment of the- present court,, appeals could only be taken to- *314 the Supreme Court of the United States ; and that court had uniformly refused to entertain appeals from the decisions of the Circuit 'Court granting or refusing a new trial.
This well-settled practice existing here when the act of March 3, 1863, was passed, should only be considered as changed by that act to the extent clearly indicated by its terms -, and no latitude of construction can be allowed in the interpretation of a statute framed in derogation of common law principles. As was said by the court in the case in 24 Howard, 211, Allgro vs. Duncan, before referred to, it is a safe rule to apply the former practice and interpret the obscurities and deficiencies of the code by the light of that practice.
In aid of this construction of the section, it is important to note that by Hule No. 60 of this court, where different reasons upon which a motion for a new trial may be made in the court below are specified, it is expressly stated that the decision, where the motion is based upon the allegation that “ the verdict is contrary to the evidence,” is addressed to the discretion of the court, and is not appealable. Although the rule could not, of course, deprive the suitor of the right if it had been conferred by the statute, its declaration is entitled to great weight in favor of our construction of the statute.
There is not the slightest desire upon our part to circumscribe the methods by which, according to the long established practice in this jurisdiction, the losing party may apply in the trial court for a new trial. The courts of justice would lose much of their value unless this mode of redress against unjust verdicts was tenaciously preserved by the judge, to be applied in his discretion, where he believed the jury have done manifest injustice by returning a verdict against the weight of the evidence.
We are only considering the extent of our authority in cases where application is made to us to review the decision of the trial justice on such motion ; and notwithstanding some intimations to the contrary in some of the prior rulings of this court, we have concluded,.after careful review of the *315 subject in all its bearings that the phrase “ for insufficient evidence,” cannot be construed as authorizing the General Term to consider whether a verdict below was “ contrary to the evidence,” or “ against the weight of the evidence.”
By a loose use of language, it may be said that a verdict “ contrary to the evidence” or “against the weight of evidence” was rendered upon “ insufficient evidence ; ” and on the other hand, that a verdict upon insufficient evidence is one contrary to or against the weight of evidence.
But we are dealing with legal expressions in their technical meaning; and it is familiar to all lawyers that evidence offered to a jury in a cause has a two-fold sufficiency, i. e., sufficiency in law and sufficiency in fact ; that of its sufficiency in law, the court is the exclusive judge ; its sufficiency in fact is a question exclusively for the jury. The court, in considering the legal sufficiency of the evidence to sustain the case of a suitor or to establish any particular fact essential to his recovery, must examine the proof with respect to its quality and quantity ; and this determination by the court is a question of law. And if the court can see that the proof offered is of such a character and volume that it might well satisfy a rational mind of the truth of the position it is introduced to maintain, then it is declared to be legally sufficient for the purpose ; and it must be submitted to the jury who are the exclusive judges of its sufficiency in fact, whether others may differ from them in their conclusions or not. As expressed in a recent decision in Maryland, followingnumerous familiar cases, “ if no evidence is offered, or if it is not such as one in reason and fairness could find from it the fact sought to be established, the court ought not to submit the finding of such fact to the jury.” Griffith vs. Diffenderfer, 50 Md.
To the same effect is the language in 40 N. Y. Sup. Ct., 181, Halpin vs. R. R. Co., “ if there is no conflict, the sufficiency is no longer a question of fact, but becomes a question of law, to be determined by the court.”
It is to this legal sufficiency that the statute refers, when it authorizes the appeal to this court, and to that inquiry alone have we the right to address an examination.
*316 5th. With this view of the duty devolved upon us, we have carefully examined the evidence in the record, with the suggestive comments of the excellent brief on behalf of the caveatee, and without consuming time unnecessarily in a detailed statement of our opinion upon its different features, it is enough to say that we find ourselves Unable to discover from the record that the verdict was rendered upon insufficient evidence.
In arriving at this conclusion, we have been obliged to bear in mind the well-settled cannons of law on the subject; that the verdict must be presumed to be right, and should be sustained, if the evidence by fair construction will warrant the finding ; that the fact that the trial judge is satisfied with the verdict is a circumstance entitled to great weight ; that in any case the court must be satisfied that there are strong probable grounds to suppose the verdict was not according to the justice and truth of the case before it will grant a new trial; and that it will not be granted where the court can see that real and substantial justice has been done that where the verdict may have been reasonably influenced by questions fairly presented as to the credibility of the witnesses, the decision of the jury should be disturbed with great caution, if at all; and that our entire system of jurisprudence is based upon the axiomatic principle, “ ad questionem facti, non respondent j'udices.”
The following extract from Waterman on New Trials, is full of instruction and warning on this point:
“ The presiding judge has heard, and what is more important has seen the witnesses testify ; noticed their demeanor listened to their cross-examination. Minute circumstances,, which are often the turning point in a case have not escaped him. The evidence has been presented full and fresh to his-mind, after- being passed through the severe ordeal of judicial scrutiny. He has had the benefit of the siftings of counsel. On the other hand, the appellate court has enjoyed none of these advantages. It receives the testimony on paper, and thus presented, it is always tame, meagre and unsatisfactory. Its whole knowledge of the case being *317 thus derived, it is but illy qualified to pass an enlightened judgment upon it. The reasons, therefore, for denying to the appellate court the right to reverse the decision of the judge who tried the cause confirming the verdict, possess great weight. It is certain this right should never be exercised except in extreme cases. That the court below deems the verdict not contrary to the evidence is a very strong presumption that it is correct. The credibility of witnesses, depending as it often does, upon their tone of voice and manner of testifying, can seldom be judged of by an appellate court ; on the contrary, when the evidence is spread out on paper, it is quite likely that undue weight will be given to that which is of doubtful veracity, and a verdict which is the result of a careful rejection of what is unworthy of belief, be overthrown from misconception of the true ground upon which it is based.” 3 Waterman, 1213.
6th. There remains to consider the sufficiency of the exceptions to the rulings of the court below in granting the prayers of the caveator.
The court, by granting the nine prayers of the caveatee, had placed his case before the jury in the most favorable light claimed by himself, and he had no fault to find with the language of the charge, which was certainly most impartial.
Was there such error in either of the six instructions complained of granted to the caveator, as worked a substantial injustice to the caveatee ?
The first instruction granted on behalf of the caveator was in these words :
‘‘ Unless the jury believe from the evidence that the contents of the paper writing, propounded as the last will and testament of Jared L. Elliott, were read to him, and that he fully understood and comprehended the same, and that he signed and declared it to be his will and testament, and that he was at the time of sound and disposing mind and memory, and capable of executing a valid deed or contract, they should find it not to be such.”
It is objected that it is faulty : 1st. Because it required *318 the jury to find that the will was read to the testator, although he might otherwise have understood its contents; 2nd. Because it required the,jury to find that he formally declared the instrument to be his will; and, 3rd. Because it required the jury to'find that the testator was of sound and disposing “ memory.”
Neither of these objections is well founded.
1st. It clearly appears he did not read the will, and it must therefore have been read to him, or he could not have comprehended or understood it. And unless he could comprehend it when it was read to him, it certainly could not be a valid will. And this is all the prayer required should be made to appear. Some form of declaration by the testator that the paper was his will was necessary, and the court ih its charge explained what would be a sufficient declaration, as follows:
“ If he understood the scheme of his will, if he dictated it or assented to it, that would be sufficient.”
The instruction placed no weightier burden upon the caveatee than he had announced himself willing to assume, as is shown by the proof.
3d. The words “and memory” were certainly superfluous. The statute, while discarding the idea that a less degree of mental capacity would suffice for the validity of a will than was requisite in the case of a deed or contract, equally dispenses with any greater mental ability. It suggests a test which a jury might readily apply to the case in hand, by reflecting whether, if the instrument bad been a contract or a conveyance, transferring part or all the property of the testator, for an inadequate consideration, they could under the proof decide that the claimant was justified in dealing with the dying man under the existing circumstances.
If the words thus inserted implied requirements different from or additional to the statutory measure of capacity, their insertion would certainly have been error.
But it is evidently a mere redundancy of expression, giving another definition of the word “ mind,” derived from the same root or source, and incapable of misleading the *319 jury ; in view especially of the caveatee’s instructions and the charge of the judge.
■Indeed, all the criticisms upon the instructions excepted to have reference to a similar use of superfluous definitions, adopted into this case from others whose peculiar features may have called for particular forms of expression neither requisite nor altogether proper here.
• If in in the record of each case, as it is tried, are to be incorporated such copious extracts from all prominent eases preceding it, the occa*ions of criticism and liability to error will increase in each succeeding trial, with the confusion of the jury and the labor of the court.
One of the errors insisted on, especially in connection with the finding in the fifth issue, is, that the jury was allowed to consider the question of undue influence as existing apart from, fraud. In this we see no error. In the language of the Court of Appeals, in Davis vs. Calvert, 5 G. & J.. 269, “importunity and undue influence may be fraudulently exerted, but they are not inseparably connected with fraud.”
A testator may entertain an unreasonable and unjust prejudice against one nearly connected with him, as a daughter who has married against his will, or a son who has ■offended him by neglecting his advice in a matter in which a child is not necessarily obliged to yield his convictions. In such a case, undue influence may be exerted by an interested person simply by the mention of the undoubted facts of the case ; and that too, under the guise of remonstrance against leaving a smaller portion to the object of the testator’s displeasure, The suggestion itself may suffice to rouse the sleeping hostility and result in the disinheritance of the child in favor of the suggestor. And yet it would be difficult to find, in the proof of these facts, evidence sufficiently strong to the apprehension of a jury to induce them to denounce as fraudulent the influence thus exerted. What the character of that undue influence must be which would be required to vitiate a will, is well expressed in the caveatea’s instructions as referred to before-, and in the charge of the judge, and we see nothing in the rather general principles *320 announced in the instructions complained of that could have worked inj ustice to the caveator.
The remaining objection is taken to the supposed inconsistency of the finding. If the verdict to be certified back with the issues was really so inconsistent that the Orphans’ Court would be at a loss to know how to enter its judgment, of course it would be error, which the Circuit Court below should have corrected. For the objection that a verdict was “ uncertain ” is one of those designated in the Rule 60 as not appealable.
But we can see no inconsistency in the verdict. A paper may be “ executed and attested according to law,” and yet be invalid for mental iucompetency, or because of fraud or undue influence. See Pegg vs. Worford, 4 Md., 395-6.
For these reasons, we affirm the judgment below.